OLSON, et al, Respondents, v. CITY OF WATERTOWN, Appellant.

(232 N. W. 289.)

(File No. 6749.   Opinion filed September 22, 1930.)

*Howard B. Case,* City Attorney, of Watertown (*George W. Case,* of Watertown, of counsel), for Appellant.

*Perry F. Loucks* and *M. J. Russell,* both of Watertown, for Respondents.

BURCH, J. Defendant is a municipal corporation, and several years ago took steps to pave and did pave a certain street of the city. Plaintiffs are owners of abutting property upon which special assessments were levied to pay for the cost of the pavement. Claiming that the proceedings were void and that the city had no jurisdiction to enter into the contract for paving, plaintiffs on the 16th of September, 1921, brought an action to restrain the carrying out of a contract with the C. H. Atkinson Paving Company to pave the street and to restrain the levy and enforcement of a special assessment therefor and to avoid the proceedings of the city council relating thereto. Defendants in that action, the city of Watertown and the C. H. Atkinson Paving Company, demurred to the complaint, which was overruled. An appeal was taken to this court and the order of the lower court affirmed. See Olson et al. v. City of Watertown et al., 46 S. D. 582, 195 N. W. 446. Thereafter in April, 1924, the case was tried and findings and judgment were in favor of plaintiffs. It was adjudged that the proceedings were void, that the city was without power to levy the special assessment then made to pay for such paving, that the assessment certificates issued be canceled, and that the city be enjoined from collecting the same. No appeal was taken from that judgment by either defendant, and that judgment has become final. Thereafter the city council claiming authority under section 6410, Rev. Code 1919, reassessed the property of plaintiffs to pay for

such paving. This action is brought to cancel the special assessments made under the reassessment proceedings. The trial court again found for plaintiffs and rendered judgment canceling such reassessed special assessments and enjoined the city from further attempt to collect the cost of such paving by special assessment of plaintiff's property. From the judgment and an order denying a new trial defendant appeals.

The statute upon which appellant relies to sustain the reassessment, section 6410, Rev. Code 1919, provides:

"Whenever any special assessment for any local improvement has been or shall be set aside for irregularity in the proceeding, or declared void by reason of noncompliance with the provisions of law when ordering or letting the work or making the assessment therefor, or where the collection of such assessment or any part thereof has been restrained or enjoined, or in any case where any special assessment made upon any lot or parcel of land shall have been heretofore or shall be hereafter set aside or in any manner rendered or found to be ineffectual, the governing body shall be authorized to make a new assessment or reassessment, and to collect the same in the manner provided by law for the collection of the original assessment, to an amount not exceeding the amount of the original assessment, together with interest at the rate of seven per cent per annum from the date at which such improvement was completed and accepted by the municipality."

Appellant contends that the foregoing statute confers authority upon the city council to reassess the property independent of its jurisdiction originally to order or make the improvement. That although the city did not acquire jurisdiction of the subject-matter because of the faulty proceedings had, which rendered the special assessments made thereunder void, as declared by the court in its judgment in the former case, nevertheless the city may collect the cost by special assessment levied by a new procedure prescribed by sections 6410 and 6411. They take the position that section 6410, Rev. Code 1919, is a curative statute, and that under its provisions the city may reassess the property whenever for any reason the original assessment has been declared void for noncompliance with the provisions of law in ordering the improvement, or in letting the contract for its construction, or in making the original assessment. And that the power to reassess exists and may be exercised after

the original assessment has been vacated for any cause, jurisdictional or otherwise. That the power conferred upon the city by the general curative act is limited only by the power of the Legislature to grant the privilege, and that any proceeding required by the statutes of the state to be taken by the city in making such improvements, which the Legislature could have dispensed with in the first instance, has been waived and cured by section 6410 because of its character as a general curative statute.

Respondents contend that the provisions of the statute apply only where the assessing authority had acquired jurisdiction of the property by legal proceedings to pave, and that in this case their property was not liable to the reassessment because the proceedings of the council in ordering and constructing the pavement were without jurisdiction and void in the following particulars: First, the initial resolution of necessity declared the necessity of paving portions of two streets of different width, intersecting at right angles. It is claimed including more than one street and streets of different widths rendered the resolution void from the beginning and that it could not at any stage give vitality to later proceedings thereunder. Second, that the city council without any further proceeding to pave as declared in the resolution of necessity delayed for about a year, then passed an ordinance materially changing the grade of the street along respondents' property and without further resolution of necessity paved only a portion of one street as included in the original resolution of necessity. It is claimed that such proceedings were wholly void; that the change of grade damaged respondents' property for which respondents were entitled to compensation before grading the street and laying the pavement; that changing the grade was a material change in the situation and invalidated the resolution of necessity to pave that street; and that the owners of property on the street so affected were entitled to a new resolution with opportunity to protest.

Conceding that all the proceedings to pave were without jurisdiction and void (as we must in this case since they have been finally adjudicated to be void), we have this question: Can the city, irrespective of such proceedings, levy a special assessment upon abutting property to pay for the pavement so constructed? It seems logical that void proceedings and acts cannot give vitality to later proceedings or furnish a basis for later assessments. Appel-

lant hardly contends that such proceedings do furnish the basis for the reassessment. Its position advances beyond and rests upon the theory that a reassessment is a new express power conferred upon the city to collect by special assessment the cost of an improvement actually constructed which benefits abutting property, although the entire proceedings leading to the construction may have been without authority and void. If appellant is right, the proceedings leading to the construction of the improvement are at this time immaterial, and the validity of the reassessment must be adjudged upon the regularity of the reassessment proceedings, depending upon the fact that an improvement has been constructed, the cost of which, for some reason declared by the court, cannot be collected by special assessment in the regular manner. Respondents deny the power to reassess when such proceedings are void. Appellant claims the power. The issue is clear cut. ·

■ ■ Taxation is the source from which public money is generally obtained, and it is elementary that when money for public use is needed it may be raised by some form of taxation, and that the Legislature may prescribe the form of the tax and manner of levying it, being bound only by constitutional limitations. The city has no way of paying the cost of the pavement except by taxation in some form. If it has already paid or is liable to pay the cost of the improvement, a valid tax must have been or must be levied for that purpose. There would seem to be no escape from that. However faulty or lacking in jurisdiction the proceedings to pave may have been, if the city has incurred a legal liability it can be discharged only by a tax. We do not understand that respondent claim the city has not paid for or incurred an obligation to pay for the pavement now actually constructed. If that were true, there would of course be no foundation for any tax, general or special. On the other hand, the mere fact of an expenditure or the incurring of a liability for public use by the state or subdivision theerof is the only foundation necessary to support a tax. A special assessment is a tax. It is based upon the assumption that a particular improvement is a special benefit to abutting property for which the owners of such property should pay. In such circumstances a special tax is considered more equitable than a general tax. Therefore wherever an improvement must be paid for by taxation it seems reasonable that the Legislature may pre-

scribe a special assessment tax so long as it does not violate any constitutional provision pertaining to taxation of persons or property. In Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 926, 31 L. Ed. 763, the Supreme Court of the United States said:

"The power to tax belongs exclusively to the legislative branch of the government. * * * 'The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people, by whom its members are elected.'"

To defend against a collection of such tax, respondents must show that the city is not liable and has made no expenditure for the cost of the improvement, in which case there can be no cause for a tax of any kind, or if this cannot be shown that though there be a liability or expenditure for which a tax must be levied, the tax objected to is not authorized or within the power of the Legislature to authorize because of constitutional limitations, or when neither of these defenses are available that nevertheless the particular tax sought to be collected was not in fact levied and assessed according to law. If the first defense prevails, there can be no tax of any kind; if the second, a tax may be levied but not of the kind attempted; if the third, the same kind of tax may be again levied but it must be done in a legal way. In the instant case a pavement has been illegally laid, but if any burden has been imposed upon the city by reason thereof, the burden must in the last analysis fall upon the taxpayers or a class of taxpayers. Of the three defenses above mentioned, the first is eliminated in the premise that there is a liability or an expenditure has been made. The second is untenable if there is a statute authorizing the tax, for the Legislature has unquestioned constitutional power to authorize special assessments for improvements of this character. The third defense was successfully urged against the original special assessments and they have been canceled. But the pavement has been constructed and there is no way of going back and doing everything over in a legal manner. It is too late to wipe the slate and start over. Unless there is some other method for paying the cost of this pavement, it can never be paid. If it can be paid, why not by

special assessment of the property benefited? That is in accord with the generally accepted ideas of justice.

Does the statute authorize the tax? If it does, we see no constitutional inhibition against it. Though our statute has never been construed by this court, numerous similar statutes have been construed in other states. In the case of Frederick v. City of Seattle, 13 Wash. 428, 43 P. 364, the Supreme Court of Washington said of a similar statute:

"It seems plain to us from the reading of the statute that the legislature intended to provide for a reassessment in all cases where the assessment had been held to be void, whether for irregularities or for want of prerequisites which went to the jurisdiction of the council to levy the assessment and to order the work done. The language of the statute is that 'whenever an assessment for laying out, establishing * * * paving, repaving, * * * graveling, regraveling * * * or for any local improvement which has heretofore been made or which may hereafter be made by any city or town, has been or may be hereafter declared void, and its enforcement under the charter or laws governing such city or town refused by the courts of this state, or for any cause whatever has been heretofore or may be hereafter set aside, annulled or declared void by any court, either directly or by virtue of any decision of such court, the council of such city or town shall, by ordinance, order and make a new assessment or reassessment upon the lots, blocks or parcels of land which have been or will be benefited by such local improvement,' etc. Laws 1893, c. 95, § 1. This language seems to clearly contemplate a case where there was no jurisdiction in the city council to order the improvements or make the assessments, which is the kind of a case that the courts would declare void. But, to put the question beyond peradventure, the legislature, in expressing the intent of the act, says: 'It being the true intent and meaning of this act to make the cost and expense of all local improvements payable by the real estate benefited by such improvement by making a re-assessment therefor, notwithstanding that the proceedings of the common council or board of public works or any of its officers may be found irregular or dedective, whether jurisdictional or otherwise.' Id. § 6."

In Duniway v. City of Portland, 47 Or. 103, 81 P. 945, 947, the state of Oregon holds that such curative statute empowers the

city council to assess by reassessment for improvements, though the council may not have had or acquired by the improvement proceedings jurisdiction to make a special assessment in the regular manner. That court says:

"The purpose of the act is manifest from its reading. It proceeds upon the assumption that assessments for benefits received by reason of local public improvements having been made are liable to fail on account of some irregularity in the procedure or some nonobservance of jurisdictional provisions in the charter, and is designed to supply a curative procedure to supplement the preceding one that has failed. It awards a new and supplementary remedy for impressing upon the abutting property a lien for the cost of the special benefits, not to exceed the original cost of the improvement, because of the failure in the first instance to carry the undertaking to a successful termination."

The Supreme Court of Minnesota, in State ex rel. Lownsberry v. District Court, 102 Minn. 482, 113 N. W. 697, 700, 114 N. W. 654, held that a judgment declaring void the contract under which an improvement was made did not prevent a reassessment. The court said:

"It is elementary that the Legislature may by curative acts remedy and validate all such defects and omissions in proceedings at law, or otherwise, as it might previously have dispensed with."

In Wiese v. City of South Omaha, 100 Neb. 492, 160 N. W. 890, Nebraska upheld a reassessment for grading though the proceedings to grade were void. In Seattle v. Kelleher, 195 U. S. 351, 359, 25 S. Ct. 44, 46, 49 L. Ed. 232, Mr. Justice Holmes said, speaking for the Supreme Court of the United States:

"The principles of taxation are not those of contract. A special assessment may be levied upon an executed consideration, that is to say, for a public work already done. Bellows v. Weeks; 41 Vt. 590, 599, 600; Mills v. Charleton, 29 Wis. 400, 413, 9 Am. Rep. 578; Hall v. Street Commissioners, 177 Mass. 434, 439, 59 N. E. 68. If this were not so it might be hard to justify reassessments."

See Mattingly v. District of Columbia, 97 U. S. 687, 24 L. Ed. 1098; Schintgen v. LaCrosse, 117 Wis. 158, 94 N. W. 84; Nottage v. City, 35 Or. 539, 58 P. 883, 76 Am. St. Rep. 513; Steele County v. Erskine (C. C. A.) 98 F. 215; Thayer Lumber Co. v. Muskegon,

157 Mich. 424, 122 N. W. 189; Smith v. Detroit, 120 Mich. 572, 79 N. W. 808; Kuehl v. City of Edmonds, 85 Wash. 307, 148 P. 19; Id., 91 Wash. 195, 157 P. 850; Nichols v. City of Spokane, 91 Wash. 235, 157 P. 863; Eggerth v. Spokane, 91 Wash. 221, 157 P. 859; Hapgood v. City of Seattle, 69 Wash. 497, 125 P. 965; Cooley Tax (2d Ed.) 306-309; State ex rel. Doyle v. Mayor, etc., of City of Newark, 34 N. J. Law, 236; City of Emporia v. Norton, 13 Kan. 569; Hughes v. Portland, 53 Or. 370, 100 P. 942; Reiff v. Portland, 71 Or. 421, 141 P. 167, 142 P. 827, L. R. A. 1915D, 772; Wagoner v. La Grande, 89 Or. 192, 173 P. 305; Phipps v. Medford, 81 Or. 119, 156 P. 787, 158 P. 666; Cawker v. Pav. Co., 133 Wis. 29, 113 N. W. 419.

We have examined respondents' citations with care and do not find any in point. Crawford v. Mason, 123 Iowa, 301, 98 N. W. 795, involved a suit by a contractor to enforce his claim on a quantum meruit basis, where he had failed to perform his contract. It was held the city was not bound to reassess the property where the first assessment was set aside. There was no liability on the part of the city. In Martin v. City of Oskaloosa, 126 Iowa, 680, 102 N. W. 529, the city council had assessed property under an old ordinance on a front-foot basis. The ordinance had been abrogated by a later statute and consequently the assessment was canceled. The council reassessed the property on the statutory basis and the reassessment was sustained. Certain language of the court may seem to support respondent's position, but that language pertains to a reassessment in the position of an amended assessment. In other words, the council were attempting to back up and make a new assessment based on the same proceedings, but in accordance with the statute instead of the old ordinance. In effect, they were amending their proceedings. Jurisdiction would of course be essential to a valid amendment. Reassessment under a curative statute was not considered. City Street Imp. Co. v. Pearson, 181 Cal. 640, 185 P. 962, 20 A. L. R. 1317, involved the validity of an original assessment not payable in installments as required by ordinance. Certain curative provisions of an ordinance were considered and held not to apply to the situation. Conn. Mut. Life Ins. Co. v. City of Chicago, 185 Ill. 148, 56 N. E. 1071, involved an original assessment. We cannot take the space to further review the authorities.

We are convinced that a reassessment as a new proceeding to impose a special tax on property benefited by an improvement may be made in the manner and within the limitations prescribed by our statute, section 6410, Rev. Code 1919, although the original proceedings under which the improvement was made were void or otherwise defective. As a new proceeding the jurisdiction and right to make the reassessment must depend upon the jurisdictional facts required by statute to reassess, and not upon prior jurisdiction to make the improvement. In the absence of some defense sufficient to prevent payment for the improvement by taxation in any manner, the power to reassess cannot be denied. That is, if the cost of the improvement can be raised by taxation in any manner the Legislature has power to prescribe how and on what property the tax shall be imposed.

All the jurisdictional facts to authorize a reassessment must exist and the proceedings in reassessment must be as strictly observed to make a valid reassessment as is required in the first instance for special assessments in the regular manner, but the jurisdictional facts and the proceedings are not the same. In the regular assessment the council must have proceeded properly to make the improvement and then properly to assess the property. Before the reassessment can be made (unless ordered by the court under section 6412), an improvement must have been made, a court must have declared the proceedings in improving or assessing the property irregular or void, and must have canceled the special assessment levied under such proceedings. In the case at bar there may be some contention that the reassessment was not regular or that the distribution of the tax on the several properties was inequitably distributed, and a retrial of the case may be necessary. But here respondents deny the power of the city to collect for the improvement by assessment of their property in any amount, so this opinion has been confined to the principal issues, leaving to the trial court the determination of the exact and equitable distribution of the tax if attorneys are not agreed.

The act of the city in changing the grade of the street to the injury of respondents merits special notice. No one contends that section 6410 as a curative statute can cure any defects in the proceedings that the Legislature could not have dispensed with by general statute. In view of article 6, § 13, of our Constitution and

the holdings of this court in Mason v. City of Sioux Falls, 2 S. D. 640, 51 N. W. 770, 39 Am. St. Rep. 802; Searle v. City of Lead, 10 S. D. 312, 73 N. W. 101, 39 L. R. A. 345; Whittaker v. City of Deadwood, 12 S. D. 608, 82 N. W. 202; Olson et al. v. City of Watertown, 46 S. D. 582, 195 N. W. 446, decided on demurrer to the complaint of respondents in the first action concerning the improvement now involved, no one can successfully contend that the Legislature could have authorized the city council to do what it did in cutting the street to the new grade without first ascertaining and paying the damage. The city had no jurisdiction or right to do so. Such act was an invasion of respondents' constitutional rights. While the threatened acts of the city were not yet completed, respondents could restrain the city, and we so held in the first action, Olson et al, v. City of Watertown et al., supra. We there held that the application for injunction was not too late because made after the letting of the contract, and that section 6412, Rev. Code 1919, prohibiting the granting of an injunction to restrain the making of any local improvement after the letting of the contract, had no application. But where the improvement has not been stopped and the work has been done, it is apparent that the abutting owners still have their right to compensation for damages, and that is the only remedy left to them. To relieve them from a special assessment for the pavement might or might not compensate them. It might be much more than ample compensation or wholly inadequate. It is not likely it would be exact compensation. They have a full and adequate remedy for all the damage done them. It is not practical to require the city to restore the old grade, but in Faulk v. M. R. & N. W. Ry. Co. et al., 28 S. D. 1, 132 N. W. 233, Ann. Cas. 1913E, 1130, this court held that an action to recover compensation might be brought at any time within twenty years after the taking of the property. That case involved a taking by a railroad company, and the principles involved in the exercise of the right of eminent domain are discussed by Judges Corson, Smith, and Whiting. Compensation for damage to property is secured by the same constitutional provision (Const. art 6, § 13), and is of the same character as compensation for the taking of property for public use. Within the principles governing eminent domain appellant had a constitutional right to damage respondents' property, but to do so only after ascertaining the amount of damage

and paying such amount. The city failed to comply with the condition precedent. It might have been restrained until it complied with such conditions, but could not have been restrained longer. Under the right of eminent domain the city could legally damage the property, but was without jurisdiction to act at the time and in the manner it acted. The special assessments were therefore properly set aside and canceled because of such irregularity. Whittaker v. City of Deadwood, 12 S. D. 608, 82 N. W. 202, 203. That judgment becoming final has set aside and canceled the special assessments then made. The judgment is res adjudicata of those assessments, but not of the reassessments. Kuehl v. City of Edmonds, 91 Wash. 195, 157 P. 850. Those assessments are not involved in this action. The assessments here involved arise from a new proceeding under a curative statute and could not have been levied at all if the proceedings to pave and the original special assessments had been valid and regular. The assessments now involved depend for their validity upon the invalidity of the original assessments and an adjudication to that effect. Consequently such judgment cannot be a bar to these subsequent proceedings, but must be established as an essential jurisdictional fact before the reassessment can be sustained.

Some comment concerning the case of Whittaker v. City of Deadwood, last above cited, as authority to sustain the setting aside and cancellation of the original assessment, is in order, since this case is relied on by respondents as authority for their contention that no assessment at any time can be made where the city, in violation of respondents' constitutional rights, damages the property without first ascertaining and paying the damage. That case involved original assessments, the last step in proceedings to pave, and depending upon the earlier steps taken. It did not involve assessments as in this case, depending not upon the regularity of proceedings to pave, but upon a new basis, namely, the need of money to satisfy a public obligation that cannot be obtained in any other regular manner, because of void or irregular proceedings irrevocably taken. Consequently what is there said is not directly in point. This court, after declaring that the city had no right to change the grade of the street without first paying or tendering damages, said, "Failing to do this, the city could not legally impose any share of the expense of making the improvements upon the

appellant." But this statement applies to an assessment founded and based upon improvement proceedings and as the last step in those proceedings. Until the first steps are legally taken there can be no authority for the last step. But it has no application to the power of the Legislature to provide a new tax to satisfy a public obligation of the city not dependent upon regular proceedings from which the obligation arose. The obligation to be satisfied by the tax levied in this case is a legal obligation that cannot be paid by a special assessment such as was involved in the Whittaker Case.

It may be thought the result of this holding is to give the city carte blanche to pave anywhere and in any manner in disregard of legal requirements and thereafter to specially assess the benefited property owners for the cost. But this is not so. The property' owners have their remedies to restrain illegal acts of the city council and to compel compliance with the law. A too great departure from legal forms may result in no liability on the part of the city to pay for the pavement and those making the improvement may have to bear the loss. But where the action is sufficient to bind the city and a tax becomes necessary, we can see no reason why the Legislature may not prescribe a special assessment tax. There may be much less injustice in taxing the benefited property than in a general tax to pay for an improvement of special benefit to a favored few. To allow that would be to put a premium upon laches and reward those who sit idly by and allow the city to make improvements contrary to law.

But respondents contend that the final judgment in this case is an adjudication of not only the validity of the assessments involved, but of the right to specially assess the property in any manner. Respondents say in their brief:

"Under the issues raised in the former action, if the court had deemed the appellant entitled to a re-assessment, as provided by section 6412, Rev. Code 1919, the court could have done so, but the granting of such relief would have been inconsistent with the decision and judgment in the former action."

Under the provisions of section 6412, Rev. Code 1919, the court is given the power to order a reassessment but not to reassess. That portion of the said section applicable to the situation here reads:

"And the court may, if in its opinion the assessment has been rendered void or voidable by the omission or commission of any act required or prohibited, order that a reassessment be made under the provisions of the two preceding sections, and require the payment of the same as a condition for granting such relief, or declare by its judgment that the same shall be a lien upon the property and authorize the issuing of execution or proper process for its collection by a sale of the property; to the end that the whole matter may be adjudicated in the one action or proceeding, and the proper proportion or ratio of the assessment be paid by the property owner; and costs of such an action or proceeding shall be taxed as the court may direct."

The two preceding sections (6410 and 6411) are the sections heretofore considered. They confer the power to reassess upon the governing body (city council), not the court. The duty of the court under section 6412 to order a reassessment is optional, and if made is "to the end that the whole matter may be adjudicated in the one action." If not ordered by the court, the council may nevertheless reassess the property. The forepart of section 6412 (not quoted) seems to contemplate that actions may be prosecuted to cancel special assessments in which some part of the assessment is valid in which case the court "must" render judgment therefor. The latter portion of the section (quoted) contemplates actions wherein the proceedings will appear to be so faulty that the special assessments levied thereunder will be void or voidable and no part of the existing special assessments will be valid, in which case the court "may" order the council to reassess the property and require the party seeking to cancel the void assessment to pay the reassessment as a condition for granting relief "to the end that the whole matter may be adjudicated in the one action." But this is discretionary. Such an action is in equity. In some cases the demands of equity may require an immediate judgment of cancellation of the void assessment, leaving the city free to pursue a subsequent appropriate method of collecting the cost of the improvement without adjudication of its act unless and until questioned. If there were outstanding assessment certificates, equity might require an immediate judgment of cancellation without waiting for a reassessment by the city council pursuant to an order of court and the subsequent adjudication of their acts in order to enable the

court to fix a condition to the allowance of an order canceling such certificates. The court ought not to, and it may well be doubted that the court can, leave the city with an obligation and at the same time cut off the only legal means the city has to meet such obligation. We certainly will not impute such action to the court unless it plainly appears that the court has attempted to do so. The judgment in the former case cannot be so construed.

The judgment and order appealed from are reversed.

BROWN, P. J., and SHERWOOD and CAMPBELL, JJ., concur.

POLLEY, J., dissents.